IN RE ESTATE OF HUGH DUFFY.

No. 45138.

MAY 14, 1940.

McCoy & Beecher and W. John Pollock, for contestant.

Ray R. Reed, for appellee.

BLISS, J.—Hugh Duffy died leaving a last will and testament and a codicil thereto, by which he bequeathed and devised his property equally among his 13 children, except that he left the share of his son George Duffy in trust for him under such conditions that it could not be subjected to the payment of his debts. The estate consisted of personal property, and of real estate in Black Hawk and Buchanan counties. Prior to the death of the testator, the Fairbank State Bank had obtained judgments against George Duffy in the approximate sum of $8,000. The will and codicil were filed for probate in the office of the clerk of the district court of Black Hawk county, and the time for hearing proof of the instruments was fixed by the

court. Before the day of the hearing the Fairbank State Bank of Fairbank, Iowa, filed objections to the probate of the will and codicil, stating, in substance, that it shows to the court that it is a banking corporation organized and doing business under the laws of Iowa, and is the owner of valid judgments against George Duffy, a son and heir of the testator, in the sum of $7,930.18; that the testator died seized of real estate in the counties of Black Hawk and Buchanan, and said judgments are of record in said counties and constitute a lien against any real estate that the said George Duffy would inherit as an heir of said testator; that the said bank objects to the probate of the alleged will and codicil of Hugh Duffy upon the ground and for the reason that at the times of the execution of the alleged will and codicil the said Hugh Duffy was of unsound mind and incapable of making a will. Dismissal of the petition for probate and denial of probate were prayed.

To these objections the following demurrer was filed:

"Comes now Chas. L. Duffy, proponent of the Will, heir at law and the Executor named in said Will of Hugh Duffy, deceased, and shows to the Court:

"That the proponent of said Will demurs to the objections filed herein by the contestant on the following grounds:

"1. That the facts stated in the objections do not entitle the contestant to the relief demanded therein for the reason that the contestant is not a party with an interest in the estate of the deceased herein.

"2. That the contestant claiming as a judgment creditor of George Duffy, one of the heirs at law of the deceased herein, is not a party with an interest in the estate of the deceased herein.

"3. That the contestant claiming as a judgment creditor of George Duffy, one of the heirs at law but not one of the direct beneficiaries under the Will of the deceased herein, has acquired no right or property of the said George Duffy in the estate of the deceased herein.

"4. That the contestant claiming as a judgment creditor

of the said George Duffy, one of the heirs at law of the deceased herein, as such, acquired no more than a lien on whatever interest the said George Duffy may have in the estate of the deceased and that such lien does not constitute a right or title to whatever interest the said George Duffy may have in the estate of the deceased and does not confer or constitute in the contestant an interest in the estate of the deceased herein."

The contestant stood upon the ruling sustaining the demurrer and judgment was entered probating the will and codicil.

The appeal comes to us on an assignment of error stated by the appellant, as follows:

"The first proposition relied upon by the appellant for reversal is that the court erred in sustaining the Demurrer filed to the objections to the probate of the will and codicil of Hugh Duffy, entering judgment dismissing the objections and in admitting the instruments to probate as the Last Will and Testament and codicil of Hugh Duffy, on the ground and for the reason that the Fairbank State Bank, a judgment creditor of George Duffy, a son and one of the heirs of Hugh Duffy, had such a beneficial interest in the estate, if there had been no will, as entitled said judgment creditor to contest the validity of the will and codicil which it is claimed was executed by the deceased."

The precise question submitted to us for determination, by this appeal, has never been before us prior to this time. A somewhat similar question was involved in Burk v. Morain, 223 Iowa 399, 272 N. W. 441, 112 A. L. R. 79. But in that case an action was brought in equity by the assignee of a deed of assignment executed by the son and potential heir of his mother, who was then living, conveying his prospective distributive share in her estate, to set aside the probate of a will and to declare the same void because of the testamentary incompetence of the testatrix and the undue influence exerted upon her. By her will she left the property assigned to others than her son. The defendants filed a motion to dismiss upon the ground that the action was

not brought by an heir at law or person entitled to inherit from the testatrix, but was brought by an alleged creditor of the son, who, as such, had no right in law or equity to contest the will. The motion was sustained and the ruling was affirmed by this court, upon the ground that all the assignee received under the assignment from the son was a contract that the latter would assign his interest in the estate if and whenever he received it as heir at law, which contract the assignee could then enforce by a suit in equity. There is but little authority on that question other than our own case.

I. It is generally recognized by the courts and other authorities that no one has any standing to object to the probate of a will, or to bring any action to set aside its probate, unless he has an interest in property which the testator owned at his death and attempted to dispose of by will.

It is not sufficient that the interest be a mere sentimental one, but it must be an interest which is beneficial to the objector in a pecuniary way. A will contest, as we now know it, was unknown to the common law, notwithstanding the right to dispose of property at death was known to the Egyptians 3,000 years before Christ, and that the Code of Hammurabi, King of Babylon, made provision for both testate and intestate succession. There can be little doubt that testamentary disposition was known to the Assyrians, the Hebrew (Genesis 48-22), the Greeks (Plutarch's Life of Solon), and the Romans (Laws of the Twelve Tables). But it was not until the Justinian Code (A. D. 534) that wills resembling the modern will were evolved. It was from the Roman law that the ecclesiastical courts of England drew heavily on the subject of testaments. See Maine's Ancient Law; Reppy & Thompson, History of Wills, 3. For many centuries in England, the term "testament" referred only to a disposition of personal property, and the term "will" was applied only to such disposition of real estate. The ecclesiastical courts had jurisdiction over the former, and the civil courts, over the latter. Probate of testaments was by the "common form," practically without notice, or by the "solemn form," ~

by which it was necessary to notify next of kin. The ecclesiastical courts might probate a will covering both personal and real property, but the authenticity of the probate respecting the real estate was not recognized by the civil courts. A special proceeding to contest a will was unknown to the common law, because proceedings to probate a will of real estate were unknown to the common law. On the death of such a testator, the devisee procured the will and went into possession of the land. If his title was questioned by partition, ejectment, or other proceeding in court, he defended by offering the will in evidence as a muniment of title, and proved its execution as he would a deed. Thus it happened that in one court his will might be sustained, and in another court, denied. In re Baker's Estate, 170 Cal. 578, 150 P. 989; Crawfordsville Trust Co. v. Ramsey, 178 Ind. 258, 98 N. E. 177; Davies v. Leete, 111 Ky. 659, 64 S. W. 441; In re Dana's Estate, 138 Fla. 676, 190 So. 52. Courts of chancery repeatedly held that comprehensive as was their jurisdiction, it did not include the power to validate or invalidate wills. In re Baker's Estate, supra; Gaines v. Fuentes, 92 U. S. 10, 23 L. Ed. 524. Statutes covering the subject matter were later enacted, and since many of these were enacted prior to the colonization of this country by the English, they became part of the common law of this country.

In, perhaps, most of the states of this country, "any person interested" or words of similar import, is the language of the various statutes with reference to those who are entitled to object to the probate of a will, or to bring action to set aside the probate.

There is no statutory provision in Iowa stating who may contest the probate of a will, or attack an order of probate. In fact, the statutory provisions in this state respecting such proceedings are rather meager. There are but three Code sections touching the matter:

Section 11864, which provides that: "When the probate of a will is contested, either party to the contest shall be entitled to a jury trial thereon." Section 11882, which provides

that: "Wills, foreign or domestic, shall not be carried into effect until admitted to probate as hereinbefore provided, and such probate shall be conclusive as to the due execution thereof, until set aside by an original or appellate proceeding." And section 11007, which provides that: "Actions may be brought within the times herein limited * * *.   3. * * * and those brought to set aside a will, within two years from the time the same is filed in the clerk's office for probate and notice thereof is given; provided that after a will is probated the executor may cause personal service of an original notice to be made on *any person interested,* [Italics ours] which shall contain the name of the decedent, the date of his death, the court in which and the date on which the will was probated, together with a copy of said will; said notice shall be served in the same manner as original notices and no action shall be instituted by any person so served after one year from date of service."

Justice Waterman in In re Estate of Stewart, 107 Iowa 117, 118, 77 N. W. 574, commented on this fact as follows:

"We have no statute defining the qualifications of those who may contest the probate of a will, but we understand the general rule to be that such action can be taken only by one who would have a beneficial interest in the estate, if there was no such will."

The same language, in substance, is repeated by Justice Mitchell, in Burk v. Morain, 223 Iowa 399, 272 N. W. 441, 112 A. L. R. 79, supra.

The solution of the case, it seems to us, is found in the principle so concisely and so completely stated. The words "beneficial interest" were not used in any narrow or technical sense, and are not to be so taken. They were used in their broad, ordinary sense, and are to be given that meaning. A "beneficial interest" is one of value, worth, advantage, or use to a person. One having such a thing of value is "a person interested", as described in section 11007, supra. The Cali-

fornia statute, in point, contains the same words. In speaking of them the supreme court of that state in In re Baker's Estate, 170 Cal. 578, 585, 150 P. 989, 992, said:

"Upon what is the right of an heir or other person in interest to contest a will, fundamentally based? Manifestly upon the illegal deprivation occasioned to him, the illegal loss to him of property or property rights, by giving recognition to an instrument depriving him of those rights, which instrument for one or another cause, is illegal, invalid, and void."

As stated by the Michigan Court in In re Meredith's Estate, 275 Mich. 278, 293, 266 N. W. 351, 355, 104 A. L. R. 348:

"It is only persons who might be injured by admitting the codicil to probate who may contest it. In re Coursen's Will, 4 N. J. Eq. 408. An interest in the property of the estate affected by the will is the foundation of the right to contest it."

In Ingersoll v. Gourley, 72 Wash. 462, 472, 130 P. 743, 747, a much quoted case on an analogous question, that court said:

"It seems to us, therefore, that any person acquiring an interest within that year [for contest], which but for the will would accrue to his pecuniary advantage, should have the right to contest the validity of the will within that time."

In Dickson v. Dickson's Estate, 286 S. W. 295, 298, the Texas Civil Court of Appeals said:

"The 'interest in the will', as used in the statute, refers to the financial interest in the result of those judicial proceedings [a will contest]." Affirmed in Dickson v. Dickson, Tex. Com. App., 5 S. W. 2d 744, 746.

The Ohio supreme court, in Chilcote v. Hoffman, 97 Ohio St. 98, 105, 119 N. E. 364, 366, L. R. A. 1918D, 575, said:

"A 'person interested', within the contemplation of this

statute [section 12079, Gen. Code of Ohio, provides that 'a person interested' in a will may contest], undoubtedly means a person who has such a direct, pecuniary interest in the devolution of the testator's estate, as would be impaired or defeated by the will, or be benefited by setting it aside."

The Arizona court, in In re Biehn's Estate, 41 Ariz. 403, 409, 18 P. 2d 1112, 1114, said:

"A 'person interested' is one who would be directly affected in a pecuniary sense by a settlement of the estate under the will, and this means one who is affected detrimentally by being deprived of a right he would have otherwise had in the absence of a will."

The New York Court, in In re Davis' Will, 182 N. Y. 468, 472, 75 N. E. 530, 531, said:

"The statute [Code Civ. Proc., section 2617] in authorizing a person 'who is otherwise interested, in sustaining or defeating the will' to appear and at his election to support or oppose its probate, means only a person who has a pecuniary interest to protect, either as an individual or in a representative capacity. An interest resting on sentiment or sympathy, or on any basis other than the gain or loss of money or its' equivalent, is not sufficient, but any one who would be deprived of property in the broad sense of the word, or who would be entitled to property by the probate of a will, is authorized to appear and be heard upon the subject. Conflict of jurisdiction and delay in administration may thus be avoided. This accords with the general rule that everyone may ask to be heard before a decree is made which may affect his rights, even if it does not finally determine them."

This case quotes with approval from In re Coryell's Will, 4 App. Div. 429, 39 N. Y. S. 508, which holds that a judgment creditor of a devisee under a will could contest a codicil which would destroy his judgment lien.

The North Carolina court, in Armstrong v. Baker, 31 N. C.

109, 114, approved in In re Thompson's Will, 178 N. C. 540, 101 S. E. 107, a case analogous to the one before us, said:

"For the right to interfere in a question of probate belongs to a party in interest; which must mean some person, whose rights will be affected by the probate of the instrument, to the prejudice of the party."

Under any of these holdings, the appellant, herein, was an "interested person", who had a "beneficial interest", a pecuniary interest, in the estate of the deceased, and in George Duffy's share therein, of which he would be deprived to his prejudice, if the will of the testator was probated.

II. For the purpose of the demurrer, and also, of this appeal, all allegations of fact in the objections to the probate of will must be taken as true. These admitted facts are, first, that the appellant is the owner of valid judgments against George Duffy; second, that George Duffy is a son and heir of the decedent; third, that the decedent died seized of real estate in Black Hawk and Buchanan counties; fourth, that these judgments constitute liens against any real estate that George Duffy would inherit as an heir of the decedent; and fifth, that at the times of the execution of the will and codicil the decedent was of unsound mind and incapable of making a will.

Under these admitted facts the demurrer should have been overruled. Since the decedent was incompetent to make a will, the purported will made by him was void, and he necessarily died intestate, and title to the distributive share of George Duffy in the real estate of the deceased, vested instantly in the son on the death of his father, and at the same instant the judgments became liens on this distributive share in the real estate.

III. It is the law of Iowa that the title to real estate of which a decedent dies seized, upon his death, descends to and vests instantly in his heirs. As stated in In re Estate of Pitt, 153 Iowa 269, 272, 133 N. W. 660, 661:

"It descends to the heirs eo instante upon the death of the

ancestor with the quantity of each definitely ascertained. From that instant, subject to the right of the administratrix to resort thereto for the payment of debts of the deceased, they may dispose of the particular property as owners as they choose and are entitled to possession and to the rents and profits.''

See also Laverty v. Woodward, 16 Iowa 1, 5; Herriott v. Potter, 115 Iowa 648, 650, 89 N. W. 91; McKeown v. Brown, 167 Iowa 489, 495, 149 N. W. 593; Harrington v. Clark, 199 Iowa 340, 344, 202 N. W. 84; In re Estate of Wilson, 218 Iowa 368, 255 N. W. 489.

IV. Under 1935 Code, section 11602, appellant's judgments became liens upon the real estate descending to George at the same time the title thereto vested in him. Such a lien was a beneficial interest entitling the appellant to contest the probate of the will. The lien of a judgment creditor which entitles him to redeem the land encumbered from tax sale, or to redeem it from sale under special execution, certainly ought to be an interest of such benefit and value to him, to entitle him to contest a will which would deprive him of that interest.

V. The question of the right of the creditor of an heir, who holds a judgment against him which would be a lien upon any real estate which he would inherit from an ancestor, to contest the probate of the latter's will, or to attack the order of probate, has been before the courts of several other jurisdictions, for answer.

The text-writers and the commentators generally agree that he has such right. In 68 Corpus Juris, section 636, it is thus stated:

''\* \* \* The creditor of an heir or distributee has not such an interest as will entitle him to oppose or contest the probate of the testator's will, except where he also has such an interest in the heir's property as will give him a part of the sum total rights of ownership, or where he is an attachment or judgment creditor who has reduced his claim to a lien which will attach the instant title vests in the heir; \* \* \*''.

In L. R. A. 1918A, 459, the commentator states:

"The cases generally hold that a judgment creditor of an heir of a testator has such an interest by virtue of his lien on the heir's real estate as entitles him to contest a will purporting to devise to another land which, in the absence of a will, would descend to the heir."

For like comment, see also, 2 Schouler on Wills, Executors and Administrators, 6th Ed., section 746; Page on Wills, 2d Ed., section 551; 12 Cornell Law Quarterly 247; Atkinson on Wills, 467, 468; Woerner, The American Law of Administration, 3d Ed., 727.

The decisions which answer the question in the affirmative, and sustain the majority rule are Smith v. Bradstreet, 16 Pickering (33 Mass.) 264; In re Langevin's Will, 45 Minn. 429, 47 N. W. 1133; Watson v. Alderson, 146 Mo. 333, 48 S. W. 478, 69 Am. St. Rep. 615; Bloor v. Platt, 78 Ohio St. 46, 84 N. E. 604, 14 Ann. Cas. 332; Brooks v. Paine, 123 Ky. 271, 90 S. W. 600; In re Coryell's Will, 4 App. Div. 429, 39 N. Y. S. 508; Seward v. Johnson, 27 R. I. 396, 62 A. 569; In re Van Doren Estate, 119 N. J. Eq. 80, 180 A. 841; Komorowski v. Jackowski, 164 Wis. 254, 159 N. W. 912; Mullins v. Fidelity & Deposit Co., 30 Ky. Law Rep. 1077, 100 S. W. 256.

The decisions upholding the minority rule and denying the right of such a judgment creditor to contest are: Bank of Tennessee v. C. L. Nelson, 3 Head's Reports (40 Tenn.) 634, 1859; Shepard's Estate, 170 Pa. 323, 32 A. 1040; Lockard v. Stephenson, 120 Ala. 641, 24 So. 996, 74 Am. St. Rep. 63; Lee v. Keech, 151 Md. 34, 133 A. 835, 46 A. L. R. 1488.

We will discuss the minority authorities first. In Bank v. C. L. Nelson, supra, it appears that the bank had recovered three judgments against C. L. Nelson, upon which executions were issued and returned "no property found." Thereafter Matthew Nelson, the father of C. L., died in 1856, leaving a will in which he devised and bequeathed his land, slaves and his other property to his wife for life, and then to his children,

including C. L. The original bill was filed January 1, 1857, to subject the remainder interest of C. L. to the payment of the judgments, and in the meantime to enjoin him from disposal. Injunctions and attachments were issued. In April 1858, an amended bill was filed alleging that the will was a nullity because witnessed by beneficiaries therein, contrary to the statute. The will had been proved in common form at the November 1856 term of the county court, by these attesting witnesses, without opposition. The lower court held the will void as to the land because of the defective execution. The supreme court reversed, but permitted the plaintiff to sell the vested remainder of C. L. on execution. The court said [3 Head's Reports (40 Tenn.) 634, 637]:

'' (We think the complainant does not occupy a position to question the validity of the probate, on the ground assumed. The will had been proved in a court of general jurisdiction of those subjects. No one, without an interest in an estate can contest a will or call for a re-probate. The complainant is only a creditor of one of the devisees, and can only act upon his rights. The debtor is content with the will, chooses to avail himself of no objection to it that may exist, although it reduces a fee in the land to which he would be entitled by law, to a remainder interest. If he acquiesces in its validity by waiving his right to object and contest it, for the incompetency of attesting witnesses, or on any other ground, how can his creditor, who has to pass through him, to reach the property, make the objection for him?) [Parentheses ours.] But this case is still stronger. Before the filing of this bill, and previous to the probate, this defendant, with other devisees, eleven in number, being aware of the difficulty which existed in relation to the attesting witnesses, entered into a written agreement, binding themselves to abide by the provisions of the will, and permit it to go to probate, without objections. This course seems to have been the result of an honest and laudable desire on their part, to carry out, and not frustrate, the deliberate and dying wishes and purposes of their father, by waiving the advantages

the law would give them by an opposite course. It was the surrender of a present for a future interest, for the benefit of their mother. Now, upon what principle can a creditor of any one of the devisees and legatees, disregard and set aside this arrangement? We think it clear that it cannot be done; and that, so far as the complainants are concerned at all events, the will is to be taken as well proved and valid, both as to realty and personalty.''

The authority of this decision is very much weakened, if not destroyed, by later decisions of the court from which it appears that under the holdings of that court those who may contest are limited to those who are directly interested as heirs or distributees. ''The statute law of Tennessee is silent as to who may propose a will for probate, or contest it.'' Winters v. American Trust Co., 158 Tenn. 479, 491, 14 S. W. 2d 740, 743. In Ligon v. Hawkes, 110 Tenn. 514, 519, 523, 75 S. W. 1072, 1073, the court after quoting that part which is in parentheses, in the excerpt from the Nelson case, said:

''The general rule in Tennessee is that only those will be allowed to contest the validity of a will who are directly interested as heir or distributee in the estate. * * * We are therefore of opinion that one who is not an heir or distributee of the testator at the time of his death and would not have been if those under whom he claims had died before the testator, has no standing in court to resist the probate of a will, or to have the probate in common form set aside for the purpose of a contest.''

Citing in support thereof the early case of Wynne v. Spiers, 7 Humphreys (26 Tenn.) 394, 407. And in speaking of the holding in the Ligon case, the same court in Bowers v. McGavock, 114 Tenn. 438, 451, 85 S. W. 893, 896, reaffirmed that holding, and said:

''Accordingly it was held in that case that the father of a granddaughter, being a stranger in blood to the testatrix, and

being wholly incapable of inheriting from her, even if the grandmother had been dead at the death of the testator, had no such interest as entitled him to have the probate in common form set aside, or to question the testamentary capacity of the testatrix.''

Since the general rule in Tennessee is, by these decisions, that only heirs by blood may contest, which has practically all the effect of a like statutory limitation, there is little force to the Nelson decision on the question before us.

Shepard's Estate, supra, first arose on certification from the register to the orphans court. It appears that Harriet Y. Shepard's will was admitted to probate and her sons Henry and Charles were appointed executors. The Montgomery National Bank and another appealed from the action of the register in probating the will, alleging they held judgments against Henry, entered prior to testatrix's death, under which writs of fieri facias, and of attachment had been issued, and levy made upon the interest of Henry in the land of testatrix. The will was alleged to be a forgery. Henry's interest had been given to his wife and children, by the terms of the will. Demurrer was filed, *denying the allegations of contestants,* and stating that because the contestants were creditors of Henry, and mere volunteers and strangers to the will, they were not such persons as were designated by statute to appeal from the probate. The trial court, in an able opinion (In re Shepard's Estate, 11 Pa. Co. Ct. Rep. 133), held for the contestants. On appeal the supreme court reversed, saying [170 Pa. 323, 327, 32 A. 1040, 1041] :

''Is the creditor of the son a 'party interested?' It may be conceded that in a certain sense a creditor is interested in the acquisition of property by his debtor, for the latter's ability to pay depends on the value of assets which the debtor can appropriate to the payment of, or the creditor seize in satisfaction of the debt. In this sense, the creditor would be interested in his debtor making a successful speculation in the stock

market, drawing a prize in a lottery, or being a legatee under a will; but he has, in no sense of the words, such a tangible interest as would confer on him, as a 'party interested,' the right of a suitor. Does the fact that the debtor here would, under the law, if his mother had died intestate, have been an heir, place the creditor in any better position? In her lifetime, and immediately before her death, the mother was the absolute owner of her estate; there was not the semblance of privity between her and her son's debtor; she could make such disposition of her entire estate, by deed, gift or will, as she chose; the son, however strong may have been his expectations, or those of his creditor, had not even a legal estate in expectancy; such an estate is a present vested right, contingent only as to possible future enjoyment. But a mere expectation that the ancestor will make a will in the debtor's favor, or will neither give nor grant the estate in his lifetime, and thereby a portion will fall to the debtor under the intestate laws, is wholly without substance as a present right, and incapable of estimate as to future value; it is utterly beyond the grasp of creditors. Then the mother dies, and her will is proven; * * *.

"That one of the heirs owes money to a stranger to the mother does not make the stranger a party interested in the will.

"If the creditor have any standing as a party interested in the estate of the testatrix, it must be by a theoretical substitution to the right of the son; but the son appears for himself, as an active supporter and executor of the will; * * *.

"Assume that on a contest at the instance of the son, the will could be set aside, how can he be compelled to initiate or carry on such a contest? If his mother had tendered him as a gift either land or money, could his acceptance be compelled, in the interest of creditors, if he chose to decline the gift? The forgery of the will is denied in the pleadings; the jurisdiction to entertain an appeal at the suggestion of creditors alone is questioned by the demurrer."

We have the highest regard and respect for the court and

its eminent ability, but its reasoning, as set forth above, is neither persuasive nor convincing in our humble judgment. We neglected to state that after the overruling of the demurrer, a jury in the common pleas court found the will valid. This appeal was from the ruling on the demurrer, and not from the judgment upholding the will in the jury trial. That appeal is reported in Shepard v. Montgomery National Bank, 170 Pa. 330, 32 A. 1042. The orphans court for the purpose of the case treated the will as invalid, under the admission of the demurrer. But the supreme court held, it will be noted that, in view of the denial in the demurrer, it was not considered as an admission of the truth of the fact allegations, for the purpose of the demurrer. The court states that the fact that contestant was a creditor of the heir does not make him *interested in the will*. This statement begs the question. His interest was, of course, not in the will, but in the inheritance of the debtor, in the absence of the will. Certainly if the will was valid, the contestant, as a creditor of the heir, had no interest in the estate devised, but if, as he alleged, the will was a forgery, it is conclusive that decedent intended to permit his property to pass to his heirs, under the statutes of descent. In which event the share of Henry would have been burdened with the lien of the judgments. The court also states that the property was the testatrix's to do with as she pleased, that she could have made a gift of it to the son, and the creditors could not have compelled him to accept it. Assuredly, this is true. But it is entirely aside from the point. What a sane person may, of her own free will, do with her property in life, or by will, after her death, is something entirely different from what may be done with it by a will which is forged, or which is invalid for any other reason.

The authority of the decision is further weakened when one reads the other reasons given by the court for its decision, for it appears that the legislature and also the Pennsylvania courts have construed the statutes as limiting "all other persons who may be interested in the estate" to "heirs, relations, next

of kin, devisees, legatees or executors'', thus by statute cutting out creditors. The court said [170 Pa. 323, 329, 32 A. 1040, 1041]:

"So this question was not raised, and there has been no express negative of his right [the right of a creditor]; but in so far as an affirmance of the rights of heirs and legatees can exclude all others, it has been decided many times that they alone have a standing as contestants. We first have what may be considered a legislative interpretation of the words in the same act in the form given for the precept to the court of common pleas; they are directed to 'cause all other persons who may be interested in the estate, as heirs, relation or next of kin, devisees, legatees, or executors, to be warned.' This seems to be an enumeration of those who, in the preceding part of the same section, are designated as parties interested; this is not conclusive, it is true, but it possesses significance as to the sense of the words first used. * * * In Dennis v. McAvoy, 8 Phila. 595, Paxson, J., said: 'It is for the heirs and heirs alone, to contest it,' the will. In Cochran v. Young, 104 Pa. 333, the present chief justice uses this language: 'Unless the caveators are of kin to Peter Cullin deceased, they have no standing in court as parties to an issue devisavit vel non to test the validity of the instrument purporting to be the last will and testament. If they were mere volunteers, having no interest in the estate, either as legatees or next of kin, they were mere intruders, and had no right to object to the probate of the will.' There are other cases, where in the decision of contests in which creditors' were not parties, the courts have interpreted the act by enumerating heirs, legatees and next of kin, but in no instance have creditors of heirs been denominated as parties interested; they follow the same thought as that expressed in the form for precept in the act itself, that those interested are legatees, heirs, and next of kin.''

In Lockard v. Stephenson, 120 Ala. 641, 643, 24 So. 996, 74 Am. Dec. 63, it appears that the will of Mary Stephenson

was offered for probate by her daughter as sole devisee and legatee. The appellants, as prior judgment creditors of the insolvent husband of the testatrix, filed a contest. After alleging the lien of their judgments, and that the testatrix died seized of real estate in which the husband would have received a share in the event of her intestacy, they allege ''* * * that, by reason of said will, their debtor is deprived of his distributive share in the property of his wife.'' This is the only ground alleged in objection to the probate of the will. There is no allegation that the instrument was not her will, for any cause. There is nothing in the opinion to indicate that she could not thus cut off her husband. The will, in fact, expressly states that she could make such disposition as she pleased. A demurrer to the petition of contest was sustained. The supreme court affirmed. The first paragraph of the following quotation indicates that the basic reason for the reversal was the fact that the legislature construed its words ''any person interested therein'' as limited to an heir or distributee of the estate. Under such a construction a judgment creditor of the husband would necessarily have no standing to contest. The court said [120 Ala. 641, 643, 24 So. 996, 74 Am. Dec. 63]:

''Section 4287 of the Code of 1896, (Code 1886, §1989), provides: 'A will, before the probate thereof, may be contested by any person interested therein, or by any person who, if the testator had died intestate, would have been an heir or distributee of his estate by filing,' etc. It is very clear that unless appellants are within that class of persons included in the words '*interested therein*,' they cannot be heard to complain of the probate of the will. The contention of appellants is, the words 'interested therein' refer to the estate of testatrix, and include every person having any interest in the property attempted to be devised by the will or otherwise, and are not restricted to those named in the will. In other words, every person who would have had any interest in the property of Mrs. Stephenson, should she have died intestate, is included in the words above italicized. If the section of the Code above

quoted did not contain any other provision conferring the right of contest upon others, who may not be designated in the will, there might be some merit in the contention. But it will be observed that it expressly names the class of persons though not named in the will, who may contest it. These persons are those, 'who if the testator had died intestate would have been an heir or distributee of his estate;' clearly demonstrating that the legislature construed the words 'interested therein' as referring to and including only such persons as took an interest in the estate of testatrix under and by virtue of the provisions of the will.

"But conceding for the sake of the argument that these words are susceptible of the construction contended for by appellants, as judgment creditors with a lien of the husband of Mrs. Stephenson, have they such an interest as will authorize them to institute and maintain this contest? It is fair to presume, and indeed it appears as to one of the appellants, that when J. T. Stephenson contracted these debts the testatrix was in life. The property was hers and she had the absolute right of disposition over it up to the very moment of her death. There was not the semblance of privity between her and her husband's creditors; she could make such disposition of her entire estate by deed, gift or will as she chose. Her husband had only an expectancy, which might or might not ripen into a vested interest or right, dependent upon his surviving her and her failure to dispose of her property during her life or by will, to take effect at her death. These expectations, while they may have inspired the hopes of his creditors, were not such an estate or interest as they could subject to the satisfaction of their demands. And however strong may have been the expectations of the husband or those of his creditors, he had no legal estate in expectancy; such an estate is a present vested right contingent only as to possible future enjoyment.''

It will be observed that the reasons are those given in the Shepard case, concerning which we have already commented.

For the reasons noted, and because of the circumstances of this case, it appears to us to have little bearing on the question.

In Lee v. Keech, 151 Md. 34, 37, 133 A. 835, 836, 46 A. L. R. 1488, the appellant, Miss Lee, held a judgment against Keech which was a lien on any land owned or thereafter acquired by him. His mother died devising land in this county to the debtor's wife, and to testatrix's daughter, in equal shares, leaving nothing to Keech. The plaintiff filed her caveat contesting the will, and alleging only the fact that she was such judgment creditor. No claim is made that the will was, for any reason, invalid, and there is no statement in the opinion which could be a basis for such claim. The caveat was dismissed by the court and the ruling was affirmed on appeal. The reason given by the court was that the statute gave the judgment creditor merely a general lien, but no right to the land nor any estate or property in it. It then continues:

"This being the nature of the judgment creditor's interest, it is the opinion of this Court that it is not such as, under the decisions of the court, would support a caveat. The judgment creditor would not be one upon whom any part of the estate or rights of ownership in the property would devolve if intestacy should be established, and by her caveat she would be seeking, not to clear title to property in which she had gained any estate or property right, but would, rather, be seeking, in the right of the heir, to procure property for the heir, which might then be sold for payment of the judgment debt. These are substantially the views expressed in Lockard v. Stephenson [120 Ala. 641, 24 So. 996, 74 Am. St. Rep. 63]; Shepard's Estate [170 Pa. 323, 32 A. 1040], and Bank of Tennessee v. Nelson, supra [3 Head, 634], and we think they are to be preferred to the opposing views."

The fact that a judgment lien is not an estate in land, in a technical sense, or that the judgment creditor does not have dominion over the land, and is not entitled to its possession, use, or rentals, is not a material factor in this matter. He

does have a money judgment against the heir, secured by a lien upon real estate, which lien can readily be converted into ownership, title and dominion. The lien is a valuable property right which increases the value of the judgment, and to say that a judgment lien on land is "no right to land nor any estate nor property in it" is attaching too much importance to quibble and technicality, and overlooking the common sense of the situation.

The earliest case upholding the contention of the appellant is Smith v. Bradstreet, supra [16 Pick. (33 Mass.) 264, 265]. The plaintiff had opposed the probate of a will on the ground of testamentary incapacity, and appealed from an adverse ruling. The appellee moved to dismiss the appeal because he was not a *party aggrieved,* within the statute. He first alleged that he was a general creditor of an heir of the testator, but upon the courts indicating that this interest was too remote, and that "such creditor has no vested right, claim, or interest to be established or defeated, by the probate or rejection of the will", the plaintiff amended to show that he had an attachment lien on real estate which would descend to the heir. The very able Shaw, C. J., then said:

"On this view of the case, we think the appellant has a right to appeal. His title depends upon proof of the will. An attachment constitutes a lien, a real interest in the land, which may be followed up to a perfect title. If the will is proved, it defeats this title; if rejected, it establishes it. The trial of this fact, in the probate court, is conclusive upon this question, and the appellant has no other time, place, or forum to try it in. If this will is established by the decree of the probate court, when, as he offers and professes that he is able to prove, that it is invalid and void, we think he is aggrieved by the decree, and by force of the statute is entitled to prosecute his appeal. Motion to dismiss the appeal overruled."

In re Langevin's Will, supra [45 Minn. 429, 430, 47 N. W. 1133], it appears that:

Langevin died seized of a large amount of real estate in September 1890 leaving a son George, against whom judgments had been obtained in 1889, which were docketed at the times of rendition so as to become liens on all real estate the son might have or thereafter acquire in the county. In October 1890 the widow of the testator filed his purported last will devising all of his real estate to others than George. The judgment creditor of George filed objections to the allowance of the instrument on the grounds of undue influence and lack of testamentary capacity. The court said:

"The sole question now involved is his right to contest the allowance of the will. 'All persons interested' may contest the probate of a will. Laws 1889, c. 46, §28. The probate is conclusive of its due execution, Section 31. The interest which shall entitle one to oppose the will must be an interest in the real estate to be affected by it, which the law will recognize. A general creditor of an heir has no interest in the real estate falling to the heir, though his ability to collect his claim might be thereby increased. But he has no vested right, claim, or interest, to be established or defeated by the probate or rejection of the will. But the case of a judgment creditor of an heir is different. If the deceased left no will, the judgments of Youngman became at once liens on the heir's share of the real estate. The probate of a spurious will would conclusively unseat the liens. So that, if this will be proved, it will defeat his liens; if rejected, it will establish them. This right to resist the probate is not materially different in principle from that of a judgment creditor to assail a prior forged or fraudulent deed, apparently conveying the lands of the judgment debtor. A judgment creditor has always a right to assail or defend against anything which may divest his lien. See Smith v. Bradstreet, 16 Pick. [33 Mass.] 264. The action of the probate court on Youngman's objections is quashed, and that court will allow him to contest the will on those objections."

In Ingersoll v. Gourley, 72 Wash. 462, 468, 130 P. 743, 746, the court made this quotation from In re Langevin's Will,

supra: " 'This right to resist the probate is not materially different in principle from that of a judgment creditor to assail a prior forged or fraudulent deed, apparently conveying the lands of a judgment debtor.' " The Washington court then said: "The analogy seems perfect, and it can hardly be doubted that the heir, as well as the creditor of the victim of a forged or fraudulent deed, may maintain an action to set it aside, in the absence of the bar of the statute of limitations or estoppel by laches. The heir may maintain the action because the right survives; the creditor, because it is assignable."

In Watson v. Alderson, supra [146 Mo. 333, 48 S. W. 478, 69 Am. St. Rep. 615], it appears that:

Benjamin A. Alderson died leaving only his children as heirs at law. On May 15, 1895, his purported will was admitted to probate. After giving a life estate and certain other property to his wife, he gave the remainder, both real and personal property, equally to his seven children, excepting his sons W. A. and D. P. Alderson, and their shares he gave to their wives. Testator's wife preceded him in death. Plaintiff, Mary A. Watson, brought this action making all the devisees parties, alleging that in 1892 and 1893 she obtained judgments against W. A. and D. P. Alderson in Jackson county, which were transcripted to St. Charles county where the testator's land was, whereby the judgments became a lien on all of the land of the two sons; that she levied on their interests in the testator's land, and purchased it at execution sale and received a sheriff's deed therefor. She further alleged that the will was not the will of the testator because he was of unsound mind and incapable of making a will, and that it was procured by undue influence. She prayed that the probate be set aside. Three of the children joined with the plaintiff. The court sustained a demurrer to the petition because Mary A. Watson "was not a person interested in the probate of the will", and the three children take the same under the will as they would by inheritance, and hence are not interested in the probate. The court said [146 Mo. 333, 342, 346, 48 S. W. 478, 480, 481, 69 Am. St.

450

Rep. 615] : "Whether or not the court committed error in so ruling, is the question on this appeal, to be determined by ascertaining who is a person interested in the probate of a will within the meaning of our statute of wills, which provides that: 'When any will is exhibited to be proven, the court or clerk may immediately receive the proof' " and grant or reject probate. Rev. St. 1889, section 8882. " 'If any person interested in the probate of any will shall appear within five years' ", he may by petition contest the will, etc.

After quoting from Smith v. Bradstreet, as herein set out, the court said:

"The logic of this position is unanswerable. The interest of such creditor in the probate of such a will is identically the same in character as that of the heir at law, and no argument can be made depriving him of the right to contest a will on the score of want of interest that would not deprive the heir at law of the same right. Descent is cast, and a will takes effect, by relation, at the moment of the death of the testator; neither heir nor devisee prior to that moment had any interest in the estate of the deceased. A lien creditor whose lien attaches the moment that title is vested in his debtor by descent cast, although by virtue of his lien judgment he had no interest in the estate of the deceased, has the same direct and immediate interest in the probate of a will by which that title would be divested that an heir at law has. It is not interest in the estate of the deceased that authorized any person to contest a will under the statute, but interest in its devolution, in the probate of a will that determines that devolution. If the common law still prevailed here on this subject; in an action in ejectment under that law between such a creditor and the heir or devisee for possession of the land after his lien had been ripened into legal title as in the case in hand, he could have contested the validity of a will which would have defeated that title. Why, then, under the comprehensive terms of this statute, should he be deprived of that right? Certainly for no reason that can be drawn by analogy from that law."

The decision is cited with authority on an analogous question in Hamner v. Edwards, 327 Mo. 281, 295, 36 S. W. 2d 929, 934.

In re Van Doren's Estate, supra [119 N. J. Eq. 80, 180 A. 841] was:

An appeal from orders of the county orphans court denying a motion to dismiss a caveat to the probate of the alleged last will and testament of Gilbert A. Van Doren, deceased. The caveators were judgment creditors of Enoch L. Van Doren, a son of the decedent. Under the will his share of the property was placed in trust for his benefit. In affirming the right of the judgment creditors to contest, the Prerogative Court of New Jersey said:

"It is contended by the appellant that the respondents are not 'parties in interest' and hence not entitled to file a caveat or take any part in the probate proceedings. Appellant relies upon authorities in other jurisdictions (Lockard v. Stephenson, 120 Ala. 641; Lee v. Keech (Md.), 133 Atl. Rep. 835; Bank of Tennessee v. Nelson (Tenn.), 3 Head 634), which, however, seem unconvincing. This court prefers to adopt the rule first established in Massachusetts to the effect that a judgment creditor of one who would inherit in the event of intestacy has a right to caveat against the probate of a will which would prevent property from descending to such heir and becoming subject to the lien of their judgment. Smith v. Bradstreet (Mass.), 16 Pick. 264; Seward v. Johnson, 27 R. I. 396; Bloor v. Platt, 78 Ohio 46; Watson v. Alderson, 146 Mo. 333; In re Langevin, 45 Minn. 429; Schouler Wills §746 (6th Ed.).

"The soundness of such rule may readily be demonstrated; title to real estate vests in the heir-at-law immediately upon the death of the ancestor, and at the same instant the lien of a judgment against such heir attaches to his interest in the land. If subsequently a valid will is probated, title may go in another direction and the apparent lien of the judgment be defeated; and although it is true that the will relates back and

takes effect as of the date of death, yet it must be remembered that it is necessary to probate that will in order to divest the apparent lien of the judgment. Obviously, it cannot be said that the judgment creditor would not be injured by the probate of such a will. And In re Coursen, 4 N. J. Eq. 408, Chancellor Pennington said: 'It is a general rule that all persons who might be injured by admitting a will or codicil to probate, may caveat against it.' Such a rule would seem to be but a natural corollary of that stated in Stebbins v. Lathrop (Mass.), 4 Pick. 33, where it was held that whoever has a right to offer a will in evidence or to make title under it may insist upon having it proved; and that 'a creditor therefore of a devisee has this right for the purpose of obtaining satisfaction of his debt.' 1 Jarm. Wills 38 (5th Am. Ed.)''

In Brooks v. Paine, supra [123 Ky. 271, 273, 90 S. W. 600], it appears:

The will of L. M. Paine was admitted to probate. Daniel Brooks and other creditors of heirs of deceased filed statement of appeal in the circuit court. From a judgment of that court sustaining demurrers to the statement, the creditors again appeal. Sons of the testator were heavily indebted and the bulk of the estate was given to grandchildren. Some creditors reduced their claims to judgment and had executions issue and levy made on the sons' interest in the deceased's land. The children of the decedent failed to prosecute an appeal from the probate. The creditors of the disinherited sons filed a statement of their appeal, setting out their interest in the probate, charging that their debtors are insolvent and refuse to prosecute the appeal, and asking to be allowed to prosecute it. They alleged that the paper probated was not the will of Paine and that he had revoked it before his death.

''The question for decision is, can a creditor of an insolvent heir at law contest a will which disinherits or diminishes the interest of such heir in his ancestor's estate?

''The probate of a will by a court of competent jurisdic-

tion is conclusive against the world, as a proceeding in rem, till reversed or vacated in a direct proceeding allowed for the purpose. Davies v. Leete, 111 Ky. 659, 666, 64 S. W. 441; section 4852, Ky. St. 1903. If, then, a paper purporting to be the will of a putative testator disposes of his property differently from the manner of the statute of descents, his heirs at law by their acquiescence might defeat the right of their creditors to have satisfaction of their debts out of their debtor's property; for, in truth, the paper may not be the will of the decedent, and it may be a fabricated instrument gotten up for the very purpose of cheating the heir's creditors. Unless creditors of such heir might somewhere, at some time, come into the probate proceedings and show cause against them, it would be in the power of such heirs to defraud their creditors without there being a remedy in law. On the other hand, it is urged that the creditors of a man have no legal estate or interest in his property, and cannot rightfully interfere without his consent to defend or prosecute lawsuits affecting his property rights, merely because they may believe it to be to their interest to do so. While every person may dispose of his own property as he pleases, the right is not unqualified. His creditors are regarded in law as having ultimate rights that the owner of the property cannot ignore altogether. He cannot give away his property, or abandon it, to the hurt of his creditors. Nor can he sell it, even for full consideration, in fraud of his creditors' rights to subject it to their debts, provided the purchaser knows of such fraudulent purpose. * * *

"It is also contended that a man should be allowed to do as he pleases with his own property, by disposing of it by will to whomsoever he chooses; that he may cut off his insolvent sons, and leave his estate to their children, or even to strangers, if he wishes. Granted. But this proceeding does not question the right of a man to make such will as he pleases. It denies the right of the man's heirs at law to make for him a will which in law he has not made. It denies the right of the heirs to settle their own property, cast upon them by the laws of descent,

upon their children, to the detriment of their creditors, by a proceeding which proposes to have a false document adjudged to be a true one. These general principles we believe to be sound in morals. * * * Where an interest would descend to an heir at law, but for a valid will making a different disposition, such heir undoubtedly is interested in the proceedings to probate such will. If he has sold and conveyed his title, his vendee then has the same 'interest' that he had in the probate proceedings. Davies v. Leete, supra. If the heir's creditor obtains a valid lien on the heir's interest by levy of an execution or attachment, he stands in the same relation of interest as if the heir had voluntarily created the lien in his favor by mortgage or otherwise.''

The decision is followed in Mullins v. Fidelity & Deposit Co., 30 Ky. Law Rep. 1077, 100 S. W. 256.

In Bloor v. Platt, supra [78 Ohio St. 46, 49, 84 N. E. 604, 605, 14 Ann. Cas. 332], it appears that Benjamin F. Platt was the son and only heir of Charlotte Spice who died July 15, 1904. On March 31, 1905, Almira E. Platt, wife of Benjamin, had probated a copy of an alleged lost will of Charlotte Spice, devising all property to Almira, with direction that Benjamin "should receive a kind and liberal support during his natural life.''

After the death of Mrs. Spice and before the will was probated, plaintiff, who was already a judgment creditor of Benjamin, caused a levy to be made on the real estate of Mrs. Spice, as the property of Benjamin. Another judgment creditor also levied. An action to marshal the liens and sell the real estate was instituted and the court settled the priorities and decreed the sale. The sheriff caused the lands to be appraised, when he was stopped by the probate of the will and a writ of injunction. This action was then brought to set aside the will. The petition was demurred to on the ground that plaintiff had no capacity to sue. It was overruled. The statutes of Ohio provided that a "person interested in a will or codicil admitted to probate * * * may contest the validity thereof''; also that

"all the devisees, legatees and heirs of the testator, and other interested persons, must be made parties to the action." In upholding the right of contest, the court said:

"Construing all these enactments together, it seems clear to us that the expressions, 'any person interested,' 'a person interested in a will or codicil' and 'other interested persons' are equivalent and may include persons other than the devisees, legatees, heirs, executors and administrators of the testator. Any person who has such a direct, immediate and legally ascertained pecuniary interest in the devolution of the testator's estate as would be impaired or defeated by the probate of the will, or be benefited by setting aside the will, is 'a person interested.' In this case the plaintiff had obtained a valid lien by levy on the property of the heir, at a time when the testatrix was supposed to have died intestate. There can be no doubt that such lien will prevail if this alleged lost will is set aside and found not to be the last will and testament of Charlotte Spice; and it is equally clear that if the probate of the will shall stand the plaintiff's lien will be defeated. The conclusion necessarily follows, that the plaintiff is a person interested and therefore has legal capacity to prosecute this action.

"But it is objected here, that the plaintiff's claim is not against the estate of the testatrix, but against the heir, who takes nothing under the will; and that the testatrix had the legal right to leave her property to whom she pleased, even to the extent of intentionally defeating the creditors of her only heir. Let all of this contention be granted; yet, if this paper, the probate of which is contested, is not the last will of the decedent, the plaintiff is interested and must prevail, because the title is then cast upon the heir by operation of law, and subject to the lien which attaches by relation to the time of the levy. Can it, therefore, be said with any show of justice or reason, that when a paper purporting to be a will, and obviously designed with the purpose of defeating creditors of the heir, is offered for probate, a lien creditor can not have

his day in court to show that the paper is not a valid last will and testament? We think not.''

The decision is cited with approval in Pettit v. Morton, 28 Ohio App. 227, 162 N. E. 627; State v. Morrow, 131 Ohio St. 266, 2 N. E. 2d 595; Chilcote v. Hoffman, 97 Ohio St. 98, 119 N. E. 364, L. R. A. 1918D 575.

In re Coryell's Will, 4 App. Div. 429, 39 N. Y. S. 508, was a proceeding to probate an alleged codicil to the will of Vincent Coryell. An application made by Rafferty to be a party to the proceeding was denied. Under the last will of the testator, real estate was devised to Josephine Whitman. Rafferty had obtained a judgment against Whitman prior to the testator's death, which became a lien on the real estate devised to her, and could be fully satisfied out of the same unless the codicil offered, which superseded the devise, was probated. Rafferty's application was denied. In reversing, with instructions that the appellant be permitted to appear and contest the probate, the court said:

"The appellant now has, prima facie, a lien upon real estate of which E. Josephine Whitman has prima facie the legal title. It is proposed to destroy this prima facie lien by probating a codicil to the will of Josephine's father, which will was duly probated five years ago. The surrogate's order denies to the appellant leave to appear and contest the proposed probate; thus denying to him the right to resist at the threshold, where it can best be done, the attack upon his prima facie right. Section 2617, Code Civ. Proc., provides:

" 'Any person, although not cited, who is named as devisee or legatee, in the will propounded, or as executor, trustee, devisee or legatee in any other paper purporting to be a will of the decedent, or who is otherwise interested in sustaining or defeating the will, may appear, and at his election support or oppose the application.'

"We think the appellant is within the letter of the statute, and clearly within its spirit. Lafferty v. Lafferty, 5 Redf.

326; Turhune v. Brookfield, 1 Redf. 220; Walsh v. Ryan, 1 Bradf. (Sur.) 433.''

In Seward v. Johnson, supra, the court recognized that the creditor of an heir had sufficient pecuniary interest to be entitled to a standing in court as a party interested in matters of probate or probate appeal, and held that such a creditor, who attaches the interest of the heir at the death of the testator, loses his right by standing idly by while a will is being contested, until the will is admitted to probate on a compromise settlement. The court said [27 R. I. 396, 399, 62 A. 569, 570]:

''Such pecuniary interest has been frequently held sufficient to give a person standing in court as a party interested in matters of probate or probate appeal.'' (Citing Smith v. Bradstreet, In re Langevin, and Shepard's Estate, 11 Pa. County Ct. 133).

In Komorowski v. Jackowski, supra [164 Wis. 254, 159 N. W. 912], the court held that the creditor of an heir, who had levied upon the heir's interest in the real estate and purchased such interest at an execution sale, stood in the shoes of his debtor sufficiently to be heard in the probate proceedings, in an attack upon the will offered, as a forged instrument.

In addition to the above-cited cases which directly support the contention of the appellant there are quite a number of other decisions from various jurisdictions, in which contests of wills have been permitted, wherein the objecting parties have borne various relationships to an heir of the testator. There are also other decisions in which the questions were more or less analogous to the one before us. A number of them refer to those cases cited herein in support of appellant's contention. In others reference is made to the fact that the probate of a will is a proceeding in rem to determine the status of the instrument, to which all the world are in some sense parties, and those having opposing rights are bound by the adjudication by virtue of the general publication of notice, and for this

reason proper opportunity should be given to assert these rights. Without in any way committing this court or intimating its attitude toward the adjudications made in any of those cases, we call attention to Crawfordsville Trust Co. v. Ramsey, 178 Ind. 258, 98 N. E. 177; Ingersoll v. Gourley, 72 Wash. 462, 130 P. 743; Davies v. Leete, 111 Ky. 659, 64 S. W. 441; In re Baker's Estate, 170 Cal. 578, 150 P. 989; In re Morrow's Will, 41 N. M. 723, 73 P. 2d 1360; In re Davis' Will, 182 N. Y. 468, 472, 75 N. E. 530; Winters v. American Trust Co., 158 Tenn. 479, 14 S. W. 2d 740; Estate of Land, 166 Cal. 538, 137 P. 246; In re Biehns' Estate, 41 Ariz. 403, 18 P. 2d 1112; In re Dardis' Estate, 135 Wis. 457, 115 N. W. 332, 23 L. R. A., N. S., 783, 128 Am. St. Rep. 1033; In re Meredith's Estate, 275 Mich. 278, 266 N. W. 351, 104 A. L. R. 348; Dickson v. Dickson's Estate, Tex. Civ. App., 286 S. W. 295, 298, affirmed in Tex. Com. App., 5 S. W. 2d 744, 746; In re Anthony's Estate, 127 Cal. App. 186, 15 P. 2d 531, 532. In re Zimmerman's Will, 104 Misc. 516, 172 N. Y. S. 80, 94. Many able attorneys appeared in the last-cited case. The opinion shows extended research. The surrogate in speaking of the practice in the English courts to permit no intermeddlers to contest, said:

"But the very slightest interest, or even a possibility of interest, now suffices to allow persons to intervene and be heard in English courts of probate [citing cases]. The general rule in the English probate courts is that it is highly expedient that the insinuation, decree or adjudication shall be as far reaching as possible, and that all persons whose interests may by any possibility be adversely affected should be given an opportunity to be heard [citing cases]. * * * The interest of a creditor of a next of kin was recognized as sufficient in an Irish case. Goods of White, 31 L. R. (Ir.) 385." The surrogate then refers to the practice in New York, and concludes: "From what has been already said it is apparent that liberality as to parties to contested probates is an inherited tradition of great antiquity in courts of this character. Such acknowledged liber-

ality seems to have been expressly recognized in modern cases in this state, not cited to me on the briefs of learned counsel.'' Upon examination of the Irish case referred to by the surrogate, In the Goods of Timothy White, 31 Law Reports (Ireland) 385, 386, we find the creditor to have been a general creditor, and the headnote of the case to state: ''A creditor of a person who takes an interest under a will has sufficient interest to entitle him, in a proper case, to a citation to recall letters of administration.'' . The court, in the opinion, stated:

''The question then is, what is the interest of a creditor necessary to enable this to be done? I turn to Tristram and Coote's Probate Practice, a treatise in which I find, as a rule, the law and practice of this Court accurately and clearly stated. * * * At page 369 is a summary of the result:—'The foundation of title to be a party to a probate or administration action is interest—so that whenever it can be shown that it is competent to the Court to make a decree in a suit for the revocation of probate or of administration, which may affect the interest or possible interest of any person, such person has ·a right to be a party to such suit in the character either of plaintiff, defendant, or intervener.' No words can be more extensive, and therefore, if Mr. Hennessy's client has any possible interest, he is entitled to be either plaintiff or defendant. A creditor of a person who has an interest under a will has a sufficient interest to entitle him to be made a party. Dixon v. Atkinson [10 Jur. N. S. 1242] (1) is a distinct authority to this effect. * * * That is a decision that the creditor of a person who took an interest under A's will was entitled to have the validity of the will and codicil tried.''

We have extended this opinion to greater length than we would have done because of the fact that in Burk v. Morain, 223 Iowa 399, 272 N. W. 441, 112 A. L. R. 79, supra, we cited with approval the cases of Shepard's Estate, and Bank of Tennessee v. Nelson, in support of a proposition which is not before us in this appeal, and because of our decision in Collins v. Ahrens, 189 Iowa 178, 176 N. W. 953. What was said in

each of those cases on the question which is before us for decision in this case, was dicta and not necessary to a decision in either of said cases, and does not control our decision herein. The trial court, in the case before us, followed the dictum in the Burk case as the basis of its ruling. In the Collins case, supra, the court cited no authority and gave no reason in support of its dictum therein. It cited Higgins v. Downs, 101 App. Div. 119, 91 N.Y.S. 937, in support of the real question before it for decision. As we have already noted, on the question involved herein, the New York decision of In re Coryell's Will, 4 App. Div. 429, 39 N.Y.S. 508, supports our decision.

We are therefore of the opinion that the demurrer of the proponent should have been overruled, and the objecting appellant granted the opportunity to present his grounds of contest, as provided by statute. The judgment of the trial court is therefore reversed and remanded and that court is instructed to render and enter judgment, setting aside the judgment admitting the last will and testament and codicil thereto of Hugh Duffy, deceased, and in conformity herewith.—Reversed and remanded.

HALE, RICHARDS, SAGER, and STIGER, JJ., concur.

MILLER, J., concurs in result.

MITCHELL, J., dissents.

MITCHELL, J. (dissenting)—I find myself unable to agree, and respectfully dissent.

The majority concede that an action to contest a will can only be brought by "one who would have a beneficial interest in the estate, if there was no such will." (See In re Estate of Stewart, 107 Iowa 117, 77 N.W. 574.)

In the case at bar, if there was no last will and testament, the estate of the deceased would descend intestate. If the deceased died intestate the alleged lien of the appellant, which is purely a creature of the statute, (see Hunter v. Citizens

Sav. and Trust Co., 157 Iowa 168, 138 N. W. 475, Ann. Cas. 1915C, 1019) would not attach to the land or create any property right in the appellant. It would simply attach to the debtor's interest in said land, subject to any infirmity or condition that may cause the interest of the heir to cease to exist, in which event the lien ceases with it.

It does not seem to me that the appellant has a real or beneficial interest in the estate of the deceased as provided by Code section 10967.

It is true that the courts of the country are not in agreement upon this question. But the rule referred to in the opinion as the minority rule (why the majority call it the minority rule I do not know, as I do not find it is so referred to in any of the cases) seems far more logical to me.

Why a judgment creditor should not be permitted to contest a will, can be no better stated than in the following quotations.

In Shepard's Estate, 170 Pa. 323, 328, 32 A. 1040, 1041, cited in 46 A. L. R. 1491:

"* * * we are of opinion that a creditor of an heir is not a party interested, as designated by the statute. We will not undertake, in the absence of express legislation, to give such scope to this language as is claimed by appellee for it; will not invite every disappointed creditor of every heir and legatee to contest the will of a parent who has attempted to provide for those dependent for subsistence on a thriftless son. For no line can be drawn which will limit the grounds of contest, if a creditor of an heir be a party interested; incapacity, undue influence, as well as fraud, may be alleged by any one of hundreds of creditors; such an interpretation would increase indefinitely the number of litigants; it would be in the power of anyone to tie up large estates, although the interest of the debtor heir might be comparatively small."

And in the case of Bank of Tennessee v. Nelson, 3 Head's Reports (40 Tenn.) 634, at page 637, we find:

"No one, without an interest in the estate can contest a will or call for a re-probate. The complainant is only a creditor of one of the devisees, and can only act upon his rights. The debtor is content with the will, chooses to avail himself of no objection to it that may exist, although it reduces a fee in the land to which he would be entitled by law, to a remainder interest. If he acquiesces in its validity by waiving his right to object and contest it, for the incompetency of attesting witnesses, or on any other ground, how can his creditor, who has to pass through him, to reach the property, make the objection for him?"

The statutes under consideration in the cases quoted from, were similar and required the same construction as Iowa Code section 10967.

While apparently the question which confronts us in this case has not been definitely ruled upon before by this court, the court has pointed the way. In the case of Collins v. Ahrens, 189 Iowa 178, 180, 176 N. W. 953, 954, this court said:

"An heir might, by successfully contesting a will, obtain means out of which payment of his debts could be made. The same result might follow from his succeeding in having the testament given a certain construction. But no one will claim that his creditor can contest the will and thus ultimately obtain satisfaction of his debt. We can see no reason why one who would have no standing to contest a will has standing to have it construed."

This court again in the recent case of Burk v. Morain, 223 Iowa 399, 272 N. W. 441, 112 A. L. R. 79, made similar statements.

True in both of these cases, it was mere dictum, but it does show that at that time as the court was then composed, had the question been presented it would have held contrary to the rule announced by the majority.

Under the rule announced, any judgment creditor of any

heir, regardless of the amount of his judgment, can force upon an estate the defense of a will contest, which will not only cost the contestant money, but the estate itself.

I would affirm the lower court.